LIBICHKY



FILED
SUPERIOR COURT
OF GUAM

2014 FEB -7 PM 4 05

CLERK OF COURT

## IN THE SUPERIOR COURT OF GUAM

PEOPLE OF GUAM

vs.

ROBERT NAPUTI CASTRO,

Defendant.

) CRIMINAL CASE NO. CM 792-13
)
)
) DECISION AND ORDER: People's
) Motion to Request Court to Identify
) Conflict of Interest
)
)
)
)
)
)

## INTRODUCTION

This matter came before the Honorable Anita A. Sukola on January 13, 2014 on the People of Guam's ("the People) Motion to Request Court to Identify Conflict of Interest. Assistants Attorney General Sean E. Brown and Lisa Lorig appeared on behalf of the People. Robert Naputi Castro ("Defendant") was represented by Attorney Peter C. Perez. The parties submitted on their respective briefs, at which time the Court took the matter under advisement. Upon review of the written arguments and legal authorities presented by both parties, the Court issues its Decision and Order **DENYING** the People's motion.

## BACKGROUND

Defendant is charged with Fourth Degree Criminal Sexual Conduct (As a Misdemeanor) (2 counts); and Harassment (As a Petty Misdemeanor). The Magistrate's Complaint alleges that Defendant "on or about the 23rd day of January 2013, in Guam," caused his hand to touch the breast of L.C.M. (DOB: 12/2/1976). He is also alleged to have caused his hand to touch the primary genital area of L.C.M. (DOB: 12/2/1976). Defendant then "did [commit] the offense of Harassment, with intent to harass another, he subjects another, that is, L.C.M. (DOB:

People v. Robert N. Castro (CM792-13)
Decision and Order – People's Mot. to Request Court to Identify Conflict of Interest

Page 1 of 6

**ORIGINAL**



12/2/1976), to offensive touching or threatens to do so." See Magistrate's Complaint (Sep. 7, 2013). Defendant was arraigned on September 11, 2013. He pled not guilty and waived his right to a speedy trial. Super. Ct. of Guam Minute Entry Log No. 100723, 101242 (Sep. 11, 2013).

On November 7, 2013, the People filed a Motion to Request Court to Identify Conflict of Interest. Defendant filed his opposition on December 17, 2013. The Court heard the matter on January 13, 2014.

## DISCUSSION

The People move the Court to identify a conflict of interest and disallow opposing counsel from representing Defendant in this case. See People's Mot. at 4 (Nov. 7, 2013). The People argue that "defense attorney, Peter Perez, in this matter represented the Victim in the case for about one year on a civil matter involving her son." Id. at 2. "While Peter Perez is no longer with the Lujan firm that was the actual firm assigned to the Victim's civil matter, he personally represented the Victim and her son for a significant period of time. Mr. Perez had access to personal information of the Victim that no Defendant should indirectly possess through their counsel." Id. As a result, the People contend that (1) opposing counsel's representation in this case will be directly adverse to his previous client; (2) opposing counsel will be materially limited in his representation of the Defendant herein; (3) the claims asserted in this case is of one client against another client; and (4) no written waiver of conflict was given by the Victim.

Defendant opposes the People's motion. While defense counsel admits he was a partner at LUJAN AGUIGUI PEREZ LLP from on or about January 2003 until August 1, 2013, he submits in his Declaration that "[d]uring the time [he] was partner there, and at all other times in

his legal practice, [he] does not believe that he ever represented the [Victim in this instant case] in any matter whatsoever." Declaration of Counsel [In Opposition to Motion to Disqualify Counsel] at 1 (Dec. 18, 2013). Defense Counsel further states in his Declaration that "[his] limited understanding is that LUJAN AGUIGUI PEREZ LLP may have represented a person on [Victim's] behalf but for an unrelated matter." Id.

The Court first looks at the Guam Rules of Professional Conduct. Specifically Rule 1.7 which provides:

> **Rule 1.7: Conflict of Interest: Current Clients.**
> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
> (1) the representation of one client will be directly adverse to another client; or
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> (2) the representation is not prohibited by law;
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
> (4) each affected client gives informed consent, confirmed in writing.

Guam R. Prof'l Conduct 1.7.

The rule suggests that a concurrent conflict exists even when the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a **third person** or by a personal interest of the lawyer. In this case, the People argue that Defense Counsel's former firm represented the Victim's son. On that basis, the Court can find that a concurrent conflict of interest exists. Likewise, the Court is unaware of any

waivers or confirmed consent submitted in writing by the affected client pursuant to Guam R. Prof'l Conduct 1.7 (b)(4).

Next, the Court looks to Guam R. Prof'l Conduct 1.9.

Rule 1.9: Duties to Former Clients
(a) A lawyer who, has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
(b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which the lawyer formerly was associated had previously represented a client
(1) whose interests are materially adverse to that person; and
(2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter;
unless the former client gives informed consent, confirmed in writing.
(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
(1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
(2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

Guam R. Prof'l Conduct 1.9.

Here, the People argue that Defense Counsel's former firm represented the Victim's son. There is no indication that an informed consent was confirmed in writing. Therefore, Rule 1.9 would not allow Defense Counsel was representing the Defendant in the instant case. "[F]or purposes of determining the lawyer's authority and responsibility, principles of substantive law external to these Rules determine whether a client-lawyer relationship exists." Most of the duties flowing from the client-lawyer relationship attach only after the client has requested the lawyer to render legal services and the lawyer has agreed to do so. But there are some duties, such as that of confidentiality under Rule 1.6, that attach when the lawyer agrees to consider whether a client-lawyer relationship shall be established. See Rule 1.18. Whether a client

lawyer relationship exists for any specific purpose can depend on the circumstances and may be a question of fact." Guam R. Prof'l Conduct Preamble 17.

"The Sixth Amendment to the Constitution guarantees that '[i]n all criminal prosecutions, the accused shall enjoy the right to have the Assistance of Counsel for his defense.'" *Wheat v. U.S.* 486 U.S. 153, 158 (1988). "[W]hile the right to select and be represented by one's preferred attorney is comprehended in the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Id. at 159. "In the nature of law practice, however, conflicting responsibilities are encountered. Virtually all difficult ethical problems arise from conflict between a lawyer's responsibilities to clients, to the legal system and to the lawyer's own interest in remaining an ethical person while earning a satisfactory living. The Rules of Professional Conduct often prescribe terms for resolving such conflicts. Within the framework of these Rules, however, many difficult issues of professional discretion can arise. Such issues must be resolved through the exercise of sensitive professional and moral judgment guided by the basic principles underlying the Rules." Guam R. Prof'l Conduct Preamble 9.

While the Guam Rules of Professional Conduct prohibits defense counsel from representing the Defendant in this case should the People's argument be correct, the Court is not convinced at this time that an actual conflict exists absent more information. At this point, there is no citation to a civil case number or any copy of a purported attorney-client contract between the LUJAN AGUIGUI PEREZ firm and the Victim. Additionally, the Court agrees with defense counsel that no Declaration was filed by the Victim. The Court is satisfied at this time with defense counsel's assertion that "he's never met with the [Victim], never discussed legal

matters with [her], never appeared in court on [her] behalf; and never received confidential communications from [her]." Declaration of Counsel [In Opposition to Motion to Disqualify Counsel] at 2 (Dec. 18, 2013). Defense counsel also asserts that "[he] is not aware of any conflict of interest or ethical breach in [his] representation of [Defendant][1] in CM0792-13" Id. For these reasons, the Court **DENIES** the People's motion. However, the Court reminds defense counsel that should information come up confirming such a representation of the Victim by his previous firm, the exercise of sensitive professional and moral judgment consistent with the Rules mentioned herein must be adhered to.

**CONCLUSION**

By preponderance of the evidence and based on the foregoing reasons, the Court **DENIES** the People's Motion to Request Court to Identify Conflict of Interest.

Further Proceedings is scheduled for ___*2/17/14 @ 9a.m.*___

**SO ORDERED** this __*7*__ day of FEBRUARY, 2014.



HONORABLE ANITA A. SUKOLA
Judge, Superior Court of Guam

FEB - 7 2014

---

[1] Court notes that Defense Counsel's Declaration makes mention of a "Mr. Cruz" when the Defendant herein is "Mr. Robert N. Castro."

COMPILER OF LAWS

FILED
SUPERIOR COURT
OF GUAM

2014 FEB 10 PM 3: 39

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| SHAWN MICHAEL Q. LUJAN,<br><br>                      Plaintiff,<br><br>      v.<br><br>ESTATE OF ISABEL CRUZ SANTOS ROSARIO and ROSA CRUZ PEREZ,<br><br>                      Defendants. | CONSOLIDATED<br>CIVIL CASE NOS.<br>CV 0505-12, CV-0861-12 |
| ESTATE OF ISABEL CRUZ SANTOS ROSARIO,<br><br>        Defendant/Third Party Plaintiff,<br><br>      v.<br><br>THE GOVERNMENT OF GUAM,<br><br>         Third Party Defendant. | **FINDINGS OF FACT**<br><br>**&**<br><br>**CONCLUSIONS OF LAW** |
| BARBARA C. CAMACHO, individually, and BARBARA C. CAMACHO, as the Administratrix of the ESTATE OF THERESE MARIE PEREZ LUJAN,<br><br>                      Plaintiff,<br><br>      v.<br><br>ESTATE OF ISABEL CRUZ SANTOS ROSARIO and ROSA CRUZ PEREZ,<br><br>                      Defendants. | |

## INTRODUCTION

This matter came before the Honorable Arthur R. Barcinas on the 14th day of October, 2014, for bench trial. Attorney Michael Berman represented the Plaintiffs, and Attorney Phillip Torres represented the Defendants. The Court now issues the following findings of fact and conclusions of law.

## FINDINGS OF FACT

After examining all of the evidence presented in this case, the Court finds that:

1. On July 21, 2010, Therese Marie Perez Lujan ("Therese") died as a direct result of a tree falling on her while she attended the Liberation Day parade.

2. On July 21, 2010, Plaintiff Shawn Michael Q. Lujan ("Shawn") suffered bodily injury, as a direct result of a tree – the same tree that killed Therese – falling on him while he attended the Liberation Day parade.

3. The trunk of the tree that fell on Therese and Shawn on July 21, 2010 stood partly on part on Lot No. 1353-1-2, Hagatna.

4. Lot No. 1353-1-2, Hagatna is owned by the Defendant Estate of Isabel Cruz Santos Rosarios ("the Defendant Estate").

5. The tree that fell on Therese and Shawn on July 21, 2010 was plainly and obviously dead at the time it fell.

6. Shawn suffered damages in the amount of $33,325.28 arising out of medical expenses incurred as a result of the injuries he sustained from the falling tree.

7. Shawn suffered damages in the amount of $100,000 arising out of the severe pain and suffering he experienced as a result of the injuries he sustained from the falling tree.

8.  Shawn was unemployed at the time he sustained injuries from the falling tree, and suffered no damages arising out of lost wages.

9.  Though Plaintiff Barbara C. Camacho ("Barbara") experienced tremendous grief in the wake of Therese's death, she suffered no legally cognizable damages.

10. All conclusions of law below that are more appropriately construed as findings of fact are adopted as such.

## CONCLUSIONS OF LAW

1.  The Defendant Estate, as the owner of the real property on which the tree that injured Shawn and Therese was located, had a legal duty to take responsible action to prevent the tree from injuring bystanders. The Defendant Estate breached that duty.

2.  The fact that the tree was only partially on the Defendant Estate's property does not allow it to escape liability. Just as a tree on a boundary line is owned in common by the owners of the adjacent properties, *see* 21 GCA § 9206, the owners share liability for injuries resulting from it being negligently maintained.

3.  The Defendant Estate argues that the Plaintiffs failed to present evidence that the Defendant Estate had actual or constructive notice of the dangerous condition of the tree, as required by *Guerrero v. McDonald's International Property Company*, 2006 Guam 2 ¶ 23, for a finding of liability. The Court does not agree. The Plaintiffs presented testimonial and photographic evidence of the condition of the tree at the time it fell, and this evidence demonstrated that tree was obviously dead and in an advanced stage of decomposition. The Court concludes that, in light of those facts, the Defendant Estate, as a property owner, had constructive notice of the potential hazard the tree posed to bystanders. The

Defendant Estate should have known, in the exercise of reasonable care, that the dead tree was dangerous.

4. The Defendant Estate insists that neither Shawn nor Therese entered the Defendant Estate's property, but this is irrelevant. The Plaintiffs cite myriad authorities consistent with the Restatement view that an owner of property near an urban roadway is obligated to safeguard against the risk of injury posed by dangerous conditions on the property, including trees, to individuals on the nearby roadway, not just those who enter the property. *See* Restatement (Second) Torts § 363(2) and accompanying comment e. The Court, applying this well-established law, agrees with the Plaintiffs.

5. The Defendant Estate further contends that Shawn and Therese assumed the risk of injury or were contributorily negligent when they approached the obviously dead tree. The Court rejects this argument. The Defendant Estate, as a property owner with dominion over the land on which the tree stood, can be charged with constructive notice of the hazard posed by a dead tree on its property; however, the same cannot be said of bystanders on a heavily traveled public roadway over which the dead tree extends. The law imposes upon property owners certain special duties of regular inspection and repair. *See Guerrero v. McDonald's, id.* In the course of discharging these duties, the Defendant Estate should have come to know of the hazard posed by the dead tree. The law does not impose any such special duty upon bystanders on a heavily traveled public roadway. Reasonable care would not have required Shawn and Therese to conduct the kind of inspection that would have alerted them to the danger posed by the tree, or to avoid the vicinity of the tree.

6. Shawn requests an award of lost wages for lost work opportunities during his convalescence from his injuries. However, he concedes that he was unemployed at the time of his injury. The Court concludes that an award of lost wages under the facts adduced would be speculative, and that lost wages therefore cannot be awarded.

7. Under *Newby v. Government of Guam*, 2010 Guam 4 ¶¶ 25-26, a plaintiff in an action for wrongful death is entitled to recover damages for loss of comfort, protection, and society of a decent only to the extent that they entail a pecuniary loss to the plaintiff. While Barbara has presented abundant and convincing evidence of her emotional suffering in the wake of Therese's death, she has not presented any evidence of any attendant pecuniary loss. Therefore, the Court, under *Newby*, *id.*, cannot award her money damages.

8. To the extent that Barbara raises a claim for loss of consortium separate from that implicit in a claim for wrongful death, the Court notes that recovery for loss of consortium at common law was limited to a husband's claim arising out of injuries to his wife, and that the tort itself was rooted in the antiquated principle that the benefits of marriage are a man's property. The tort was only recently expanded by some jurisdictions to encompass claims by wives for injuries to their husbands, and even more recently to encompass claims by parents for injuries to their children or by children for injuries to their parents. Barbara has cited no authority, and the Court can find none, for the novel proposition that loss of consortium damages are available for injuries suffered by a sibling. The Court concludes that Barbara, as Therese's sibling, is not entitled to damages for loss of consortium.

9. All findings of fact above that are more appropriately construed as conclusions of law are adopted as such.

## CONCLUSION

Accordingly, as to the claim of Plaintiff Shawn Michael Q. Lujan against the Defendants, judgment shall be entered in favor of Plaintiff Shawn Michael Q. Lujan in the amount of $133,325.28 plus costs. As to the claim of Barbara C. Camacho against the Defendants, judgment shall be entered in favor of the Defendants and costs shall be allowed to the Defendants.

**IT IS SO ORDERED** this day of ___FEB 10 2014___ .

_____
HONORABLE ARTHUR R. BARCINAS
Judge, Superior Court of Guam

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam. Dated at Hagåtña, Guam

FEB 1 0 2014

Cynthia T. Tiong
Deputy Clerk, Superior Court of Guam

LISCART

**IN THE SUPERIOR COURT OF GUAM**

FILED
SUPERIOR COURT
OF GUAM
2014 FEB 10 AM 5: 01
CLERK OF COURT
BY:_____

PEOPLE OF GUAM

vs.

LENICIA SHANNELLE QUINATA,

JOVANNI MILAN DIXON GUERRERO,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

CRIMINAL CASE NO. CM267-13

DECISION AND ORDER

Defendant's Motion to Dismiss Due to Civil Compromise

## INTRODUCTION

This matter came before the Honorable Anita A. Sukola on February 3, 2014 on Lenicia Shanelle Quinata's ("Defendant Quinata") Motion to Dismiss due to Civil Compromise. Defendant Quinata was represented by Assistant Alternate Public Defender John P. Morrison. Co-Defendant Jovanni Milan Dixon Guerrero ("Defendant Guerrero") was represented by Attorney Anthony R. Camacho. The People of Guam ("the People") were represented by Assistant Attorney General Jesse J.N. Nasis. The parties submitted on their respective briefs and the Court took the matter under advisement. Upon review of the evidence, written arguments and legal authorities presented by the parties, the Court hereby issues this Decision and Order **GRANTING** Defendant Quinata's motion.

## BACKGROUND

Defendant Quinata and Defendant Guerrero were arrested on March 11, 2013 on charges of Assault by Mutual Combat (As a Misdemeanor).[1] It is alleged that Defendants "were

---

[1] The Magistrate's Complaint caption charges out the crime against Defendants as a Misdemeanor. However the citation



**ORIGINAL**

engaged in a verbal altercation when [Defendant Guerrero] threw a pillow at [Defendant Quinata]." Magistrate's Complaint at Declaration (Mar. 12, 2013). "[Defendant] Quinata indicated that [Defendant] Guerrero pulled her hair, twisted her right thumb and arm, grabbed and twisted her right leg and ankle." Id. "[Defendant] Quinata responded by pushing and scratching Defendant Guerrero in an attempt to get him to stop." Id. "Officers noted redness to [Defendant] Quinata's wrist and ankle and [she] appeared to be limping." Id. Officers also "noted redness to [Defendant] Guerrero's lower lip and scratch marks on his neck and face area." Id.

Defendants were arraigned on April 3, 2013. Both Defendants pled not guilty. See Super. Ct. of Guam Minute Entry Log 102026 & 102053 (Apr. 3, 2013). The case was assigned to this Court on April 5, 2013. On December 27, 2013, Defendant Quinata filed a Motion to Dismiss Due to Civil Compromise. Defendant Guerrero filed his waiver relative to the civil compromise on December 30, 2013. Likewise, the People filed their opposition to the dismissal on January 23, 2013. On February 3, 2014, the Court heard the matter.

## DISCUSSION

Defendant Quinata moves the Court to dismiss the instant case arguing that she "would like this misdemeanor compromised." Def. Quinata's Mot. to Dismiss at 2 ( Dec. 27, 2013). Defendant Quinata "has signed and executed a declaration acknowledging she would like this misdemeanor compromised and case dismissed against Mr. Guerrero." Id. Defendant Quinata also acknowledges that "she has received satisfaction for the damages caused by [Defendant] Guerrero." Id. She goes on to state on her Declaration that "[she] and Jovanni Milan Dixon Guerrero can and have reached an amicable settlement and [they] have resolved their past

provided by the Attorney General's Office refers to 9 GCA § 19.30 (d) which specifies that the charges herein should be classified as a "petty misdemeanor."

differences and difficulties. [Furthermore, she does] not require any other restitution." Waiver Re: Civil Compromise (Dec. 27, 2013).

Defendant Guerrero also filed a waiver in this case. Defendant Guerrero declares under penalty of perjury that an amicable settlement has been reached between himself and Defendant Quinata. Equally, the differences can or have been resolved and no restitution is required. See Def. Guerrero's Waiver Re: Civil Compromise (Dec. 30, 2013).

The People oppose the motion. The People argue that dismissal due to civil compromise is prohibited in this case because there is no satisfaction for injury in this case. "The People's position is that satisfaction of the victim's injury is best addressed through the rehabilitation of the Defendant through the criminal justice system." People's Opp'n Mot. at 3 (Jan 23, 2014). The People also contend that "there is no voluntary statement from Defendant Guerrero indicating that he has received satisfaction for his injury." Id. at 4.

Misdemeanors may be compromised in accordance with Guam law. Guam's Criminal Procedure provides when misdemeanors may be compromised as follows:

(a) When the defendant has been charged with the commission of an offense which is not a felony for which the person injured by the act constituting the offense has a remedy by a civil action, the offense may be compromised as provided by the Section.

(b) If the person injured appears before, or files his declaration in, the court in which the criminal action is pending at any time before trial and acknowledges that he has received satisfaction for the injury, the court may, on payment of the costs incurred, order the criminal action dismissed.

(c) A dismissal under this Section is a bar to another prosecution of the same offense.

8 GCA § 80.90

Section 80.90 is based on California Penal Code §§ 1377 and 1378. California case law is persuasive when there is no compelling reason to deviate from California's interpretation. *Zurich Ins. (Guam), Inc. v. Santos*, 2007 Guam 23 ¶ 7. As such, the legislative purpose behind

allowing civil compromise of criminal misdemeanors is not to guarantee a victim maximum compensation for the injury, but to remove from criminal prosecution those offenses for which there is a civil remedy available. *People v. Stephen*, 182 Cal. App.3rd 14, 27 (1986). The rationale for this legislative purpose, as indicated in *Stephen*, is that the public interest in those cases is best served by requiring the accused to make restitution directly and immediately to the individual victim instead of subjecting the accused to criminal sanctions for the welfare of society in general. Id.

In *People v. Moulton*, 131 Cal.App.3d Supp. 10 (1982), the Court held that various factors may be taken into consideration by a trial judge in determining whether to dismiss a misdemeanor criminal prosecution under a civil compromise statute. These factors include (1) whether the civil injury was coextensive with the criminal violation; (2) whether the circumstances were such that through private settlement the injury to the public was fully vindicated; and (3) whether the victim's settlement agreement was made voluntarily. Id. at 21-23.

In the instant case, the Defendants are charged with Assault by Mutual Combat (As a Petty Misdemeanor). As indicated in *Moulton*, by its very nature, Assault is a crime in which the person injured would almost always have a civil action for damages. Id. at 21. Since a civil remedy was readily available at the inception of this criminal case, it may be deduced that the civil injury was coextensive with the criminal violation.

In regards to whether the circumstances are such that through private settlement the injury to the public would be fully vindicated, the *Moulton* court held that the seriousness of the injury, as well as the circumstances of the commission of the offense, are taken into consideration in "determining whether a civil satisfaction adequately vindicates the public's

interest in enforcing its criminal laws." Id. at 23. In the instant case, the altercation was between the Defendants involved in a domestic relationship.

Lastly, in regards to whether the victim's settlement agreement was made voluntarily, this Court recognizes that both co-Defendants and cross victims submitted their Declaration that they have met and resolved their differences and civilly compromised the incident. The Court is not in a position to second guess their Declaration, considering it was submitted under penalty of perjury. Therefore, the Court accepts that the cross victims have voluntarily made their Declaration.

The Court finds that Defendant Quinata's motion provides both the legal and factual basis to approve dismissal pursuant to 8 GCA § 80.90 for the following reasons: (1) The acts constituting the offense have a remedy by civil action; (2) the injury suffered by the cross victims was not serious in nature and private settlement would fully vindicate any injury to the public; and (3) the cross victims have submitted a declaration under penalty of perjury that they received satisfaction for the injury and would like for the Attorney General's Office to dismiss this case by way of civil compromise. There is no information provided to the Court of any costs incurred as a result of this incident. Therefore, the Court **GRANTS** Defendant Quinata's motion recognizing that the civil compromise statute as applied in the instant case serves the interests of justice, judicial economy and fairness to the parties.

/ / /

/ / /

/ / /

/ / /

/ / /

## CONCLUSION

By preponderance of the evidence and based on the foregoing reasons, the Court **GRANTS** Defendant Quinata's Motion to Dismiss Due to Civil Compromise. The case is hereby dismissed as to both Defendants.

**SO ORDERED** this _10_ day of FEBRUARY, 2014.



HONORABLE ANITA A. SUKOLA
Judge, Superior Court of Guam

FEB 1 1 2014

VICTOR C. FERNANDEZ and )
MARIE A. FERNANDEZ, )  CIVIL CASE NO. CV0970-13
)
Plaintiffs, )
)  **DECISION AND ORDER**
vs. )
)
LI, XIU, YAN, WANG, JUN RONG, and )
YUN SHING GUAM, INC., )
)
Defendants. )
)

## INTRODUCTION

This matter came before the Honorable James L. Canto II on Defendants' motion to dismiss, filed September 11, 2013. Oral arguments were heard on November 15, 2013. Attorney William B. Pole represented Plaintiffs and Attorney Phillip Torres appeared on behalf of Defendants. Having considered the parties' briefs, oral arguments, and the applicable law, the Court now issues the following Decision and Order.

## BACKGROUND

On August 14, 2013, Plaintiffs filed a verified complaint alleging that Defendants breached a lease agreement between Plaintiffs and Defendants in which Defendants rented a house at 175A Naiao PL, Barrigada, Guam (hereinafter "Premises") from Plaintiffs, committed fraud in the inducement and actual fraud in failing to renovate the Premises, and caused additional damages to the Premises. (Verified Compl., 2-4, Aug. 14, 2013).

On September 11, 2011, Defendants, jointly and individually, filed a motion to dismiss on three grounds: (1) Defendant Xi Yan Li moves to dismiss the case against her on the grounds that the Complaint fails to state a contract claim against her upon which relief can be granted; (2) Defendants Jun Rong Wang and Yung Shing Guam, Inc. move to dismiss the claims against them by Plaintiffs for failure to state a claim against them; and (3) Defendants jointly move to

dismiss this action against all of them on the grounds that Plaintiffs did not have a business license during the times asserted in their claims. (Mot. Dismiss, 1, Sept. 11, 2013).

On October 8, 2013, Plaintiff filed an opposition to the motion, arguing that (1) there are sufficient facts pled to show that Plaintiffs entered into a lease and that Defendants failed to live up to the terms of the Lease resulting in financial loss and harm; (2) Plaintiffs have a valid business license; (3) a contract dispute exists between the parties; (4) Plaintiffs should be given leave to amend the complaint if Defendants' motion is successful. (Opp'n Mot., 2-7, Oct. 8. 2013).

On October 23, 2013, Defendant filed a reply, arguing that Defendant Li was the only Defendant to have signed to the lease agreement and the lease agreement contains deficiencies which precluded the agreement from constituting a contract. (Reply, 2-3, Oct. 8, 2013). Further, Defendant asserts that Plaintiffs have not pled with particularity and that Plaintiffs failed to have a valid business license during the term of the lease agreement from February 21, 2011 to February 20, 2013. *Id.* at 3-4.

## DISCUSSION

### I.     Motion to Dismiss

Under Guam R. Civ. P. 12(b)(6), a claim may be dismissed where it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Core Tech Intn'l Corp. v. Hanil Engineering & Const. Co., Ltd.*, 2010 Guam 13 ¶ 52 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In order to dismiss a claim pursuant to Rule 12(b)(6), a court must review the pleading in the light most favorable to the non-movant, accept its material allegations of fact as true, and resolve any doubts in favor of the non-movant. *First Hawaiian Bank v. Manley*, 2007 Guam 2 ¶ 9.

In this case, viewing the verified complaint in the light most favorable to Plaintiffs and accepting its material allegations as true, Defendants failed to renovate the Premises as required under the lease agreement and caused additional damages to the Premises. (Verified Compl., 3, Aug. 14, 2013). On this basis, the verified complaint alleges that Defendants breached a contract, committed fraud, and caused further damage to the house.

A complaint that is attacked under Guam R. Civ. P. 12(b)(6), "need not contain detailed factual allegations, [but] a plaintiff's obligation to provide the grounds of his entitlement to relief 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Core Tech*, 2010 Guam 13 ¶ 52 (quoting *Twombly*, 550 U.S. at 555). Guam R. Civ. P. 12(b)(6) was adopted from Fed. R. Civ. P. 12(b)(6) and a federal court's interpretation of the analogous federal rule is persuasive authority. Guam R. Civ. P. 12(b)(6). *See also Sananap v. Cyfred, Ltd.*, 2011 Guam 21 ¶ 24 n. 13; *Pelowski v. Taitano*, 2000 Guam 34 ¶ 12. The U.S. Supreme Court holds the following regarding how substantive a pleading must be to survive a Civil Procedure Rule 12(b)(6) motion:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'...The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully...But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.' Fed. Rule Civ. Proc. 8(a)(2). In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009) (citations omitted).

Pursuant to Guam R. Civ. P. 8(a), a complaint shall contain, "a short and plain statement of the claim showing that the pleader is entitled to relief." The U.S. Supreme Court explains that:

> [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertions" devoid of "further factual enhancement. ...a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citations omitted).

The Court goes on to explain that, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice...Rule 8 marks a notable and

generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* (citations omitted).

Defendants here filed a motion to dismiss on three grounds: (1) Defendant Xi Yan Li moves to dismiss the case against her on the grounds that the Complaint fails to state a contract claim against her upon which relief can be granted; (2) Defendants Jun Rong Wang and Yung Shing Guam, Inc. move to dismiss the claims against them by Plaintiffs for failure to state a claim against them; and (3) Defendants jointly move to dismiss this action against all of them on the grounds that Plaintiffs did not have a business license during the times asserted in their claims. (Mot. Dismiss, 1, Sept. 11, 2013). Each ground will be discussed, in turn.

## II.    Contract Claim Against Defendant Li

Defendant argues that the lease agreement does not comport with the elements of a contract because the consideration for the agreement cannot be determined from the agreement. (Mot. Dismiss, 2, Sept. 11, 2013). Under Guam law, an enforceable contract requires an offer, acceptance, and consideration. *Mobil Oil Guam, Inc. v. Tendido*, 2004 Guam 7 ¶ 34 (citing 18 GCA § 85102 (1992) ("It is essential to the existence of a contract that there should be: 1) Parties capable of contracting; 2) Their consent; 3) A lawful object; and 4) A sufficient cause or consideration.")). Even if a contract is not stated in words, an implied contract can exist where the terms are manifested by conduct. 18 GCA § 86103 (2005).

In the present case, the breach of contract claim is supported by the following alleged facts: (1) On or about February 21, 2011, Defendant Li executed a two year lease ending on February 20, 2013 to rent the Premises; (2) The lease required Defendants to renovate and repair the Premises as partial consideration; (3) Defendant Li immediately took possession and took occupancy of the Premises; and (4) Defendant Li paid $350 per month for rent. These facts, when taken as true, address the existence of a contract between Plaintiffs and Defendant Li and how Defendant Li breached the contract. This breach of contract claim raises a right to

relief above the speculative level and for these reasons, the claim is plausible on its face and shall not be dismissed on this ground. *See Twombly*, 550 U.S. at 555.

## III.    Fraud Claim

Defendants argue that Plaintiffs have not pled fraud with particularity and that they have not provided sufficient facts and circumstances to allege misrepresentation. (Reply, 3, Oct. 23, 2013).   Under Guam law, the elements of fraud are as follows: "1) a misrepresentation; 2) knowledge of falsity (or scienter); 3) intent to defraud to induce reliance; 4) justifiable reliance; 5) resulting damages." *Trans Pacific Export Co. v. Oka Towers Corp.*, 2003 Guam 3 ¶ 23 (citations omitted).

The fraud claim brought by the Fernandez Plaintiffs is supported by the following alleged facts: (1) Defendant Wang, a licensed and experienced contractor, induced Plaintiffs to rent the Premises to the Defendants without which Plaintiffs would not have entered into the lease; (2) Throughout the period of the lease, Defendants repeatedly promised that full repairs, renovations and/or improvements would be completed to the Premises; 3) Defendants left the Premises without having made the renovations and repairs; and 4) Damages resulted from the failure to complete the improvements to the Premises.  These facts, when taken as true, do not address how Defendants actions, or inactions, constitute fraud.  Specifically, Plaintiffs do not allege any factual allegations as to the knowledge of falsity (or scienter) on the part of Defendants when dealing with Plaintiffs and also lack factual allegations relating to Defendants' intent to defraud to induce reliance.  Absent a well pled fact of fraud, the claim fails to raise a right to relief above the speculative level. *See Twombly*, 550 U.S. at 555.  For these reasons, the claim of fraud is not plausible on its face and that claim shall be dismissed.[1]

//

//

___

[1] Defendants further oppose dismissal on the grounds that amendment should be granted.  This argument lacks merit because no amended pleading has been presented for the Court to review. *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

## IV. Claims Against Defendants Jun Rong Wang and Yung Shing Guam, Inc. as to the Lease Agreement

Defendant Wang and Defendant Yun Shing Guam, Inc. argue that they are not parties to the lease agreement and should not be part of the suit. (Mot. Dismiss, 3, Sept. 11, 2013). Plaintiffs allege that Defendant Li entered into the lease on behalf of all the Defendants. (Compl., 2, Aug. 14, 2013). Plaintiffs appear to have included Defendant Wang in the suit because Defendant Wang allegedly induced Plaintiffs to rent the house to Defendant Li. However, as stated above, the fraud claim is dismissed. *Id.* Furthermore, Plaintiffs appear to have included Defendant Yun Shing Guam, Inc. in the suit because Defendant Li and Defendant Wang wholly own Yun Shing Guam, Inc. and the Premises were used by the company's workers. *Id.* However, the lease agreement is only signed by the Defendant Li and Plaintiffs fails to adequately show how Defendant Li entered into the lease on behalf of the other two Defendants in this suit or in his or her capacity as owner of Yun Shing Guam, Inc. Absent such a showing and a well pled fact of a breach of contract against Defendants Wang and Yun Shing Guam, Inc., the breach of contract claim cannot be maintained against Defendants Wang and Yun Shing Guam, Inc., and those claims against them which refer to the lease agreement shall be dismissed. *See Twombly*, 550 U.S. at 555. ("Factual allegations must be enough to raise a right to relief above the speculative level").

## V. Business License

Defendants argue that 11 GCA § 70130 provides that a plaintiff cannot maintain the action if he or she does not have a business license and, because Plaintiffs did not have a business license during the period in question, they are precluded from maintaining this lawsuit against Defendants. (Mot. Dismiss, Sept. 11, 2013). Plaintiffs assert that the recent amendments to the statute allow a business to cure any issues that would arise from not having obtained a business license. (Opp'n Mot., 4-5, Oct. 8, 2013).

This case involves Guam's Business License Law, found at 11 GCA §§ 70101 *et seq.* (2007). In deciding the business license issue herein, the Court finds the following statutes relevant:

**11 GCA § 70130. Restriction of Activities on Persons Engaging in, Transacting, Conducting, Continuing, Doing, or Carrying on a Business Without Licenses.**

It is the policy of the government of Guam that all persons engaging in, transacting, conducting, continuing, doing, or carrying on a business have business licenses. Unless otherwise specifically exempted by law, no person shall engage in, transact, conduct, continue, do, or carry on a business in Guam until it obtains a business license. The requirement to obtain a business license shall be independent of and in addition to a requirement for a certificate of authority from the Director of Revenue and Taxation or other applicable regulating agency or board, pursuant to applicable Guam laws, including, but not limited to, 22 GCA § 15307, 22 GCA § 15102, 18 GCA § 7102 and 11 GCA § 106213.

**11 GCA § 70131. Consequences of Engaging in, Transacting, Conducting, Continuing, Doing, or Carrying on a Business Without Business License or Certificate of Authority.**

(b) Any person engaging in, transacting, conducting, continuing, doing, or carrying on a business on Guam without a business license and, as may be required by all applicable laws of Guam, a certificate of authority from the Director of the Department of Revenue and Taxation, or other applicable regulating agency or board, may not maintain a proceeding in any Court on Guam until it obtains a business license and, as may be required by all applicable laws of Guam, a certificate of authority to transact business on Guam.

...

(e) Notwithstanding the provisions of this Section, the failure of a person to obtain a business license, and, as may be required by all applicable laws of Guam, a certificate of authority from the Director of the Department of Revenue and Taxation, or other applicable regulating agency or board, does not impair the validity of its corporate acts or prevent it from defending any proceeding in Guam.

Furthermore, Title 11 Chapter 76, a subset of the Business License law, provides, in pertinent part:

Every person engaged in or carrying on any service business or calling, which shall include *all non-professional activities engaged in for other persons for consideration*, involving the rendering of a service as distinguished from the production or sale of tangible property, but not including the services rendered by an employee to his employer, *shall be required annually to obtain a service license*. The annual fee for a service license shall be Fifty Dollars ($50.00) except that the fee shall be *Ten Dollars ($10.00) for any person who rents or leases not more than one family–residential unit*.

11 GCA § 76101 (2007) (emphasis added).

Here, Plaintiffs rented a house to Defendants for the consideration of $350 per month

and renovation to the house. Therefore, Plaintiffs were required to obtain a license. *See* 11 GCA § 76101 (2007). The lease period was from February 21, 2011 to February 20, 2013, but the Plaintiffs obtained a license on April 17, 2013. (Opp'n Mot., Exhibit 9, Oct. 8, 2013).

Under Guam law, the lack of a business license does not void the underlying obligation altogether. *Guam Tai-Pan Dev. and Constr. Inc. v. Yigo Alta Estates*, 2002 Guam 20 ¶ 11. Thus, the failure of Plaintiffs to hold a business license does not negate the validity of the underlying lease agreement. *Jenkins v. Montallana*, 2007 Guam 12 ¶ 21 n.7 (citation omitted). However, even if a Plaintiff obtains a business license thereafter, he or she may not collect for the breaches of an agreement that occurred during the period of time within which the individual did not have a valid business license. *Arashi & Co., Inc. v. Nakashima Enterprises, Inc.*, 2005 Guam 21 ¶ 26. Thus, under Guam Supreme Court precedent, Plaintiffs may not recover for the breaches of the lease agreement during the period which Plaintiffs did not have a valid business license, which equates to any time before Apr. 17, 2013. Because the complaint alleges breaches to the lease agreement before Apr. 17, 2013, any and all claims against Defendants arising from the lease agreement shall be dismissed.

Having found that Plaintiffs may not recover for the breaches of the lease agreement for the period in which Plaintiffs did not hold a business license, any amendment to the complaint in this regard is futile and thus, leave to amend the complaint shall not be awarded to Plaintiffs. *See Arashi & Co., Inc. v. Nakashima Enterprises, Inc.*, 2005 Guam 21 ¶ 16 (finding that leave to amend may be denied in circumstances where amendment would be futile).

## VI. Property Damage Claim

Plaintiffs state a cause of action against Defendants alleging that Defendants' "workers/employees" caused an estimated $12,993.55 in physical damage to Plaintiffs' house. (Verified Compl., 3, Aug. 14, 2013). Plaintiffs allege Defendants are liable for said damages via a *respondeat superior* theory. Id. This alleged cause of action is unaffected by Plaintiffs' ability to legally enforce a lease agreement or their timely acquisition of a business license. Further, Defendants did not specifically address this particular claim by Plaintiffs in their

motion to dismiss. Thus this claim withstands that dismissal motion.

///

///

///

## CONCLUSION

Based upon the foregoing, Defendants' motion to dismiss is hereby GRANTED in part, such that the fraud claim and any and all claims pertaining to the lease agreement are hereby dismissed. The claim regarding a cause of action for damage to real and/or personal property, as well as any other cognizable claims not discussed above, survive the motion to dismiss.

SO ORDERED this __11TH__ day of February, 2014.

**HON. JAMES L. CANTO II**
**Judge, Superior Court of Guam**

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam

Dated at Hagatna, Guam

FEB 11 2014
Enrique F. Aflague, Jr.
Deputy Clerk, Superior Court of Guam

Law Library

**IN THE SUPERIOR COURT OF GUAM**

| CHEN YU MACK, | ) | CIVIL CASE NO. CV0651-11 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **DECISION AND ORDER** |
| | ) | |
| DONALD B. DAVIS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## INTRODUCTION

This matter came before the HONORABLE VERNON P. PEREZ on November 8, 2013 on Defendant's Motion to Compel Discovery Responses. Attorney Jehan'ad G. Martinez appeared on behalf of the Defendant. Attorney Daniel J. Berman appeared on behalf of the Plaintiff. Having reviewed the pleadings, the arguments presented and the record, the Court now issues the following Decision and Order.

## BACKGROUND

This case arises from a complaint for Injunctive Relief and Damages. Plaintiff alleges that Defendant granted her an irrevocable proxy. Plaintiff and Defendant came to an agreement in 2008 where they would put up their own money to form IHIAC, Inc. in addition to acquiring a joint loan from Bank of Guam ("BOG") also for that purpose. The intent was to purchase Zurich Insurance Guam, Inc. ("ZIG"). After forming IHIAC, both parties were issued 1,999 shares of IHIAC stock and 2 shares went to one Francis Santos as a tie breaker. The agreement came to fruition and IHIAC bought all of the stock of ZIG, after which ZIG's name was changed to Island Home Insurance ("IHIC"). After the company consolidation was completed, Plaintiff alleges that she invested $1,525,000.00 into IHIAC, transferred her Staywell Guam, Inc., stock worth approximately $3,000,000.00 to IHIAC, became jointly liable on a $9,415,000.00 loan from BOG and allowed her $1,960,000.00 valued real property to be used as security on the BOG loan.

Thereafter, Plaintiff alleges that Defendant promised Plaintiff a proxy of Defendant's shares to allow Narcissa Samonte ("Samonte") to become a 10% shareholder in IHIAC to calm Plaintiff's concerns over becoming a minority shareholder. Plaintiff also alleges that Defendant granted her a proxy of his shares via email. Plaintiff attempted to use the alleged proxy at a shareholders meeting on April 8, 2011 in order to pass a resolution that would grant her $10,000.00 a month and reduce Defendant's annual salary. Yet, when attempting to use the alleged proxy, Defendant revoked his proxy and Plaintiff's resolution failed.

On January 12, 2012, this Court issued a Preliminary Injunction ordering Defendant to desist from voting his share of his IHIAC stock until the resolution of this matter at trial. The Guam Supreme Court subsequently affirmed the Court's decision. There were, however, pending issues regarding discovery. Defendant brought a Motion to Compel Discovery responses and Plaintiff opposed. The Court now addresses that motion.

## DISCUSSION

At issue is whether the Court should compel production of Plaintiff's tax returns and other documents relative to Plaintiff's financial condition. The Supreme Court of Guam in *Haeuser v. Dept. of Law, Gov't of Guam* explained that "[t]he United States Supreme Court and the Ninth Circuit have recognized that tax returns are privileged documents, but do not enjoy an absolute privilege from discovery." *Haeuser v. Dept. of Law, Gov't. of Guam*, 1999 Guam 12 ¶ 23. (citing *St. Regis Paper Co. v. United States*, 368 U.S. 208, 219; *Premium Service Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975). Furthermore, "[a] public policy exists against unnecessary disclosure in order to encourage taxpayers to file complete and accurate returns." *Id.* (citing *Premium Service Corp.*, 511 F.2d at 229).

The Supreme Court in *Haeuser* adopted a rule to determine whether tax returns should be disclosed in discovery. "[A] court must determine whether: 1) the tax return is relevant to the subject matter in dispute; and 2) a compelling need exists for the return because the information

sought is not obtainable from other sources." *Id.* (citing *Terwilliger v. York Int'l Corporation*, 176 F.R.D. 214, 216-217 (W.D. Va. 1997). "The party seeking discovery of tax returns bears the burden of establishing its relevance, while the resisting party has the task of identifying an alternative source for information." *Id.*

The trial court in the underlying case in *Haeuser* ruled against production of tax returns, finding that there were other sources from which to draw the information from those documents. The Supreme Court affirmed the trial court's decision, ruling that the "government present[ed] only general assertions of relevance and [did] not offer any other arguments to justify reversing the trial judge's determination that these documents were not needed." *Haeuser* at ¶ 28.

In the present case, Defendant argues that establishing the truthfulness of Plaintiff, and her financial claims, necessitates the requests for production. Def's. Mot. pg. 5. Defendant further argues that there are no public sources of the information being sought as Plaintiff is not a publicly traded company, or a public employee whose financial condition is subject to reporting requirements and public scrutiny. Def's Mot. pg. 5. On that basis, Defendant concludes that Plaintiff should be ordered to produce the documents requested.

Plaintiff first argues that her financial information is not relevant to any issue in this litigation. She further argues that the legal issue at hand is not whether she needs the money but instead whether she is legally entitled to it. Plaintiff cites to 6 Moore's Federal Practice § 26.1(8)(a)-(b), which states in relevant part: "[c]ourts continue to apply the general principle that a party's financial information is relevant for purposes of discovery if it implicates specific elements of a claim or defense. Plaintiff also cites to case law for the notion that disclosure of tax returns is especially disfavored. *U.S. v. Bonnano Organized Crime family of La Costra Nostra*, 119 F.R.D. 625, 627 (E.D.N.Y 1998).

The Court is tasked with balancing the discovery needs of a party against the public policy favoring non-disclosure. In the *Bonnano* case cited by Defendant, the Court set aside an order precluding the production of tax returns and held that the tax returns were "clearly relevant" because of the Government's contentions that the party, from whom the tax returns were sought, did not have adequate income to make purchases and operate as he did. *Bonnano* at 628. In *Smith v. Bader*, the court noted that along with the test of relevance and whether there was a compelling need for the information, some courts also considered whether the taxpayer has made an issue of his income. *Smith v. Bader*, 84 F.R.D. 437, 438 (1979). In that case the Court ordered the production of the plaintiff's tax returns, holding that "[p]laintiffs have placed their income in issue by claiming that they have suffered a loss due to defendants' actions and it would be inequitable to prevent the defendants from obtaining the necessary evidence to disprove this claim." In *Mitsui & Co., v. Puerto Rico Water Resources Authority*, the court also ordered the plaintiffs therein to produce their income tax returns. *Mitsui & Co. Inc. v. Puerto Rico Water Resources Authority*, 79 F.R.D. 72, 81 (1978). In that case, the plaintiff claimed over thirty million dollars for losses and damages due to defendants' alleged non-compliance with their obligations under the contract. The Court ultimately held that the plaintiff "clearly put at stake its income . . . so as to waive any right it may have to maintain undisclosed its tax returns' matters." *Id.*

Here, we have a similar situation. Plaintiff alleges: Because of [Defendant's] breach of the irrevocable Mack Proxy, [Plaintiff] has suffered general, consequential, and compensatory damages, including, but not limited to, damages for lost profits, attorney's fees and expenses, pre-judgment interest, future and loss bargain damages in an amount to be proven at trial. Pl's Compl. ¶ 52.

Further, in its April 22, 2011 letter to Defendant, Plaintiff wrote: "I have become unable to pay my debts monthly as they become due without the $10,000 monthly compensation you promised me in exchange for my investment and contribution in the companies. I will need to admit to BOG shortly that I am unable to pay all my debts as they come due." See Decl. of Jehan'ad Martinez, Decl. ¶ 3; Ex. 1. The Court notes that Defendant is a co-borrower on the BOG debt referenced by Plaintiff.

The Court deems the above two references sufficient for a finding that Plaintiff's income has been placed at issue. As such, the Court believes that production of tax returns and financial documents is relevant to the subject matter in dispute. Furthermore, Plaintiff has not identified an alternative source for the information sought. On that basis, the Court will grant Defendant's Motion to Compel Production of Discovery Responses, as outlined in the parties' Amended CVR 37.1(b) Stipulation filed on December 30, 2011. The Court, however, heeds the traditional privacy concerns relative to these documents, and orders that the parties sign a confidentiality stipulation prohibiting the disclosure of documents produced to anyone other than counsel.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Compel Discovery Responses.

So ORDERED this 11th day of February, 2014.

HONORABLE VERNON P. PEREZ
JUDGE, SUPERIOR COURT OF GUAM

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam. Dated at Hagåtña, Guam

FEB 1 1 2014

Therese M. Blas
Deputy Clerk, Superior Court of Guam

*Chen Yu Mack v. Donald B. Davis*
Decision and Order
Civil Case No. CV0651-11                   - Page 5 of 5 -

## IN THE SUPERIOR COURT OF GUAM

PORT AUTHORITY OF GUAM,

                     Petitioner,

vs.

CIVIL SERVICE COMMISSION,

                     Respondent,

and JOSE B. GUEVARA, III,

                     Real Party in
                     Interest.

SPECIAL PROCEEDINGS CASE NO.
SP0125-13

**DECISION AND ORDER**

This matter came before the HONORABLE VERNON P. PEREZ on November 22, 2013 for Further Proceedings. Attorney John R.B. Bell appeared on behalf of the Port Authority of Guam ("Petitioner"). Attorney Jeffrey A. Moots appeared on behalf of Jose B. Guevara, the Real Party in Interest ("Guevara"). At the hearing, the parties brought to issue, whether the Court has jurisdiction to proceed on this case.[1] The Court took the matter under advisement. Having considered the parties' arguments and pleadings, the Court now issues the following Decision and Order.

### BACKGROUND

This case stems from actions taken by the Civil Service Commission ("Respondent") relative to Guevara's employment at the Port Authority of Guam ("PAG"). Guevara occupied a position referred to as "Financial Affairs Controller" at the PAG. Verified Pet. ¶ 5. On December 18, 2012, Guevara was served a Final Notice of Adverse Action for dismissal based

---

[1] Guevara had also filed a Motion to Dismiss requesting that the Court dismiss Petitioner's filing for lack of jurisdiction. Although the November 22, 2013 hearing was not a motion hearing, the Court heard arguments relative to the Guevara's Motion to Dismiss.

*Port Authority of Guam v. Civil Service Commission*
Decision and Order
Special Proceedings Case No. SP0125-13      - Page 1 of 5 -

on allegations pertaining to the certification of unavailable funds, among other things. Verified Pet. ¶ 13. Guevara subsequently appealed his termination to Respondent, seeking to void the personnel action, in part, on the basis that Petitioner violated a provision of 4 GCA § 4406, also known as the "60-Day rule." Verified Pet. ¶ 18. Petitioner opposed the appeal on the grounds that the 60-Day rule was not violated and also that, as an unclassified employee, Guevara had no standing to appeal his termination before respondent. Verified Pet. ¶ 19,30. Ultimately, a majority of Respondent's Commissioners voted to grant Guevara's motion to void the personnel action against him. Verified Pet. ¶ 30. Petitioner then filed the instant matter.

## DISCUSSION

Before the Court can address the substance of Petitioner's claims, the Court must first determine whether jurisdiction over this matter is proper. The Verified Pet. states that this court has jurisdiction over this subject matter pursuant to 7 GCA § 4101 and 7 GCA §§ 31101, et seq. Verified Pet. ¶ 1. Further, Petitioner requests Judicial Review, pursuant to 7 GCA § 31108. Verified Pet. ¶ 2. Guevara contends that pursuant to *Carlson v. Perez*, 2007 Guam 6 ¶ 61, the Guam Supreme Court states that 4 GCA § 4406, instead, provides the statutory jurisdiction for judicial review of the Respondent's decisions regarding an adverse action. Mot. to Dismiss pg. 2. Guevara also points out that the procedure to be applied is that which is developed pursuant to the Court's authority found in 7 GCA § 7117. Mot. to Dismiss pg. 2. On those bases, Guevara argues that Petitioner has failed to invoke any legal basis for this Court to exercise jurisdiction to review Respondent's decision and, therefore, the Court should dismiss Petitioner's filing.

The relevant portions of the statutory provisions at issue are as follows:

//

//

### § 4101. Superior Court: Nature and Composition

The Superior Court of Guam is a court of general jurisdiction in Guam, having original jurisdiction as prescribed by this Title and in other laws of Guam which are not within the exclusive jurisdiction of the Supreme Court of Guam or the District Court of Guam.

7 GCA § 4101.

### §§ 31101, et seq. Writ of Review

The Writ of certiorari may be denominated the writ of review.

7 GCA §§ 31101, et seq.

### § 31108. Extent of Review

The Review upon this writ cannot be extended further than to determine whether the inferior tribunal, board, or officer has regularly pursued the authority of such tribunal, board, or officer.

7 GCA § 31108.

### § 4406. Adverse Action Procedures and Appeals

The decision of the Commission or appropriate entity shall be final, but subject to judicial review.

4 GCA § 4406.

### § 7117. Means to Carry Jurisdiction into Effect

When jurisdiction is by law conferred on a court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of the proceeding be not specifically pointed out by law or by rules of procedure adopted by the Supreme Court, any suitable process or mode of proceedings may be adopted which may appear most conformable to the spirit of this Title.

7 GCA § 7117.

The Guam Supreme Court in *Carlson v. Perez*, 2007 Guam 6, held that "where the agency's specific legislation directs how the agency action is to be judicially reviewed, then that agency's law should govern how one is to seek judicial review of that agency's action." *Carlson*

*v. Perez*, 2007 Guam 6 ¶ 59. The Supreme Court went on to recognize that, "the law establishing the [Civil Service Commission ("CSC")] governs appeals to the CSC from adverse actions and provides for judicial review." *Id.* at ¶ 60. While 4 GCA § 4406 arguably confers jurisdiction on the court to review decisions of the CSC, the Supreme Court held that it only provides guidance as "the statute is . . . silent on the procedures for obtaining review." *Id.* at ¶ 61. The Court went on to hold that "for an appeal of a CSC decision, the aggrieved must denominate the Petition as a 'Petition for Judicial Review.'"[2] Finally, the Court held that "reliance on the procedures of the writ of mandate is inappropriate because the extraordinary remedy of mandate is discretionary and carries a threshold of satisfying certain statutory requirements, while review of a CSC adverse action decision should be heard as a matter of right, not discretion." *Id.* at ¶ 66.

In the present case, Petitioner attempts to invoke jurisdiction on this Court by citing to 7 GCA § 4101, 7 GCA §§ 31101, et seq, and 7 GCA § 31108. Verified Pet. ¶ 1-2. As these statutes alone deal with the Nature and Composition of the Superior Court, Writ of Review, and Extent of Review, the Court can dismiss this petition as inconsistent with the holding in *Carlson*. The Court, however, finds a distinction with facts in the present case and those in *Carlson*.

In *Carlson*, the Petitioners sought a writ from the Superior Court to reverse the Guam Economic Development and Commerce Authority ("GEDCA") actions taken against them. *Carlson* at ¶ 53. They urged the Supreme Court to "treat their respective petitions liberally, and construe them as petitions for judicial review." *Id.* at ¶ 67. The Court, however, declined to do so because neither Petitioner indicated in the pleadings that they were appealing the CSC decisions. *Id.* Further, the Petitioners did not even name the CSC as a party to the proceeding."

---

[2] The Court reasoned its holding as stemming from its power to designate "any suitable process or mode of proceedings . . . most conformable to the spirit of this title" found in 7 GCA § 7117.

*Id.* at ¶ 55. This Court, however, takes note of footnote 24, where the Supreme Court therein stated, "[i]ndeed if the Petition had named the CSC as a party and requested review of the CSC decisions, we would have treated it as an appropriate Petition for Judicial Review notwithstanding its label as a Petition for a Writ of Mandate." *Id.* at ¶ 67, fn. 24.

In this case, the CSC is named as a party to the proceedings. Furthermore, the Court is satisfied that there are sufficient grounds to determine that although Petitioner invoked this Court's jurisdiction erroneously under the Writ provision, the Petitioner ultimately seeks Judicial Review of the CSC's decision. Thus, the Court construes the pleadings liberally and maintains jurisdiction over this matter. On that basis, the Court will deny Guevara's motion to dismiss for lack of Jurisdiction.

## CONCLUSION

For the foregoing reasons, the Court DENIES the Real Party in Interest's Motion to Dismiss.

So **ORDERED** this day of __11__ February, 2014.

_____
HONORABLE VERNON P. PEREZ
JUDGE, SUPERIOR COURT OF GUAM

//

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam. Dated at Hagåtña, Guam

FEB 1 1 2014

Therese M. Blas
Deputy Clerk, Superior Court of Guam

*law library*

## IN THE SUPERIOR COURT OF GUAM

THE PEOPLE OF GUAM

vs.

JONATHAN A. LEON GUERRERO,

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

CIVIL CASE NO. CM583-05

FILED
SUPERIOR COURT
2014 FEB 11 PM 3: 18

CLERK OF COURT
BY _____

**ORDER AFTER HEARING**

This matter came before the HONORABLE VERNON P. PEREZ on February 5, 2014 for Further Proceedings. Assistant Attorney General James Stake appeared representing the Government. Attorney Todd Thompson appeared representing the Defendant. Having reviewed the pleadings and the arguments presented, the Court now issues the following decision and order.

### DISCUSSION

Defendant pled guilty to one count of Assault (as a misdemeanor) on May 5, 2005. Judgment was entered and the Court ordered Defendant to pay a fine of $500 to the Criminal Injuries Compensation Fund and restitution to the victim. The Court also sentenced Defendant to a two year term of supervised probation expiring May 5, 2008. The issue is whether the Court still has jurisdiction over Defendant. The People argue that the Court should exercise its jurisdiction over Defendant because he has failed to make any payments to his fine and restitution. The People ask that the Court find Defendant in contumacious default and order him incarcerated for a period of one (1) year. Defendant argues that the Court lacks jurisdiction to revoke probation because Defendant's probationary term expired on or about February 23, 2009. As a result, Defendant requests this Court disregard the People's demand that Defendant be imprisoned. The Court agrees with Defendant. Pursuant to *People v. Anson*, 1998 Guam 11, the People's motion was made after Defendant's probationary term had expired. Thus the Court is now without jurisdiction. On that basis the Court will not order Defendant be incarcerated. The Court, instead, will dismiss this matter.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** the People's Motion and **ORDERS** this case Dismissed.

So **ORDERED** this day of ___11ᵗʰ___ February, 2014.

_____
HONORABLE VERNON P. PEREZ
JUDGE, SUPERIOR COURT OF GUAM

//

//

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam. Dated at Hagåtña, Guam

FEB 11 2014

Therese M. Rios
Deputy Clerk, Superior Court of Guam

*Law Library*

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| TUDOR CONSTRUCTION CO., INC., and PHILIP C. AHN, | ) ) ) ) CIVIL CASE NO. CV0513-12 |
| Plaintiffs, | ) ) |
| vs. | ) DECISION AND ORDER ) ) |
| CORE TECH INTERNATIONAL CORPORATION and FIDELITY AND DEPOSIT COMPANY OF MARYLAND, | ) ) ) ) ) |
| Defendants. | ) ) |

## INTRODUCTION

This matter came before the Honorable James L. Canto II on Defendant Fidelity and Deposit Company of Maryland's motion for summary judgment on Plaintiff's supplemental complaint of bad faith, filed September 27, 2013. The final brief by the parties regarding this motion was filed October 21, 2013, and the Court took the matter under advisement thereafter. Having considered the parties' briefs and the applicable law, the Court now issues the following Decision and Order.

## BACKGROUND

On May 3, 2012, Plaintiff filed a complaint to allege nonpayment for work completed in two construction projects as a subcontractor to Defendant Core Tech International Corporation (hereinafter "CTI"), where one project was guaranteed by a payment bond executed with Defendant Fidelity and Deposit Company of Maryland (hereinafter "Fidelity"). Plaintiff alleges that CTI owes $103,525.15 plus interest for its work on the first project for the U.S. Navy (hereinafter "Navy project"). (Complaint, 2, May 3, 2012). Plaintiff also alleges that CTI owes $232,502.49 plus interest for its work on the second project for the Guam Waterworks Authority (hereinafter "GWA project'). *Id.* at 2-3. The amount owed for work completed on the GWA project is fully insured by Fidelity's payment bond pursuant to 5 GCA § 5304. *Id.*

On November 7, 2012, Plaintiff moved to supplement its complaint with an additional claim that Fidelity has refused to pay undisputed debts in violation of a surety's good faith duty to process claims. Plaintiff's proposed supplemental complaint alleges that the parties agreed upon undisputed amounts of liability in August 2012 but that Fidelity withheld payment in bad faith and caused further damages related to creditor claims, and the emotional distress and hospitalization of Plaintiff's President. (Mot. to Add Supplemental Claims, 5-6, Nov. 7, 2012).

On January 23, 2013, CTI and Fidelity moved to amend their answers to allege a set-off defense and a breach of contract counterclaim for the GWA project. Plaintiff argues that paragraphs nine and ten of the counterclaim do not state plausible claims for relief and are therefore futile or alleged in bad faith. The proposed amended answers also deny the prior admission that $232,502.49 plus interest is owed to Plaintiff for the GWA project. Defendants assert that the prior admission was made in error and Plaintiff objects that the correction is made in bad faith and with delay that shall cause prejudice.

On April 16, 2013, the Court issued a Decision & Order granting Tudor's motion to amend the complaint in part, but denied Tudor's motion to supplement a claim for emotional distress damages. (Dec. & Order, April 16, 2013). The Court also granted CTI's motion to amend their answer. *Id.*

On August 30, 2013, Tudor filed a motion for partial summary judgment on three separate grounds: (1) there is no question of material fact that there is an undisputed amount presently due and owing to Tudor from Defendants on the GWA project; (2) CTI is not entitled to $75,940.41 in remediation costs as a matter of law regarding its counterclaim; and (3) Tudor is entitled to the amount of $103,1525.13 plus interest for Tudor's extra work performed at CTI's request on the Navy project. (Mot. Partial Summ. J., 1-2, Aug. 30, 2013). In opposition, CTI and Fidelity argue that: (1) under Guam law, an obligee of a surety agreement may not recover in tort for a surety's bad faith, and thus Tudor has failed to state a claim for relief against Fidelity for bad faith; (2) the undisputed amount allegedly owed to Tudor is in dispute and the construction subcontract authorized CTI to set-off all of the amounts asserted in its counterclaim, which amounts exceed any amounts allegedly owed to Tudor; and (3) there are

genuine issues of material fact relating to the Navy project. (CTI's Opp'n. Mot., Sept. 27, 2013); (Fidelity's Opp'n. Mot., Sept. 27, 2013).

On September 27, 2013, Fidelity filed a motion for summary judgment on Plaintiff's supplemental complaint of bad faith asserting that a cause of action for "surety bad faith" should not be recognized, and even if it is recognized, Fidelity is still entitled to summary judgment based on the facts of this case. (Fidelity's Mot. Summ. J., 8-19, Sept. 27, 2013).

## DISCUSSION

### I.    Summary Judgment Standard

Guam Civil Procedure Rule 56(c) provides that a court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Guam R. Civ. P. 56(c) (2010). A genuine issue of fact exists when "there is 'sufficient evidence' which establishes a factual dispute requiring resolution by a fact-finder." *Iizuka Corp. v. Kawasho Int'l (Guam), Inc.*, 1997 Guam 10 ¶ 7 (*citing T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)). "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit.... Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *Id.* "If the movant can demonstrate that there are no genuine issues of material fact, the non-movant cannot merely rely on allegations contained in the complaint, but must produce at least some significant probative evidence tending to support the complaint." *Id.* at ¶ 8 (*citing Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 106 S.Ct. 2505 (1986)).

In order to determine whether summary judgment may be granted, "the Court must view the evidence and draw inferences in the light most favorable to the nonmovant." *Edwards v. Pacific Financial Corp.*, 2000 Guam 27 ¶ 7 (*citing Anderson*, 477 U.S. at 249). "The court's ultimate inquiry is to determine whether the 'specific fact' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *Iizuka*, 1997 Guam 10 ¶ 8

(*quoting T.W. Elec. Serv.*, 809 F.2d at 631) (internal quotations omitted). "Stated simply, there is a trial issue if there is sufficient evidence for a jury to return a verdict in the non-moving party's favor." *Kim v. Hong*, 1997 Guam 11 ¶ 8 (*citing Anderson*, 477 U.S. at 250).

## II. Bad Faith Claim Against Surety

On January 29, 2013, the Court issued a Decision and Order recognizing a cause of action for bad faith claims against a surety. (Dec. & Order, 4-6, Jan. 29, 2013). Fidelity argues that, even if the Court deems surety bad faith a recognized tort on Guam, applying the undisputed facts in this case to the relevant law warrants summary judgment in favor of Fidelity, precluding this claim.

In the jurisdictions that recognize a cause of action for surety bad faith, courts have noted that "[s]o long as a surety acts reasonably in response to a claim made by its obligee, the surety does not risk bad faith tort liability." *Dodge v. Fidelity and Deposit Co. of Md.*, 778 P.2d 1240, 1243 (Ariz. 1989) (citation omitted). Conversely, "[w]hen the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort." *Wilson v. 21st Century Ins. Co.*, 171 P.3d 1082, 1087 (Cal. 2007).[1]

In its briefs, Fidelity references *Fidelity Enterprises, Ltd., v. National Union Fire Insurance Company of Pittsburgh, Pa.*, CV0753-05, at 8 (Super. Ct. Guam Jun. 7, 2012), which quotes a California Court of Appeals case as follows: "[A]n insurer denying or delaying the payment of policy benefits due to the existence of a *genuine dispute* with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract." *Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co.*, 108 Cal.Rptr.2d 776, 784 (Ct. App. 2001) (emphasis added). However, this genuine dispute does not relieve an insurer from its obligations to *thoroughly and fairly investigate, process and evaluate* the insured's claim. *Wilson*, 171 P.3d at 1089 (emphasis added). "A genuine dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds." *Id.* (citations omitted).

---

[1] Under Guam law, suretyship is a type of insurance. 22 GCA § 18106 (2005).

Applying the genuine issue rule in the context of summary judgment motions filed in bad faith claims, a reviewing court may "grant summary judgment when it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable—for example, where even under the plaintiff's version of the facts there is a genuine issue as to the insurer's liability under California law." *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1161 (9th Cir. 2002). Under the above example, "because a bad faith claim can succeed only if the insurer's conduct was unreasonable, the insurer is entitled to judgment as a matter of law." *Id.* However, "an insurer is not entitled to judgment as a matter of law where, viewing the facts in the light most favorable to the plaintiff, a jury could conclude that the insurer acted unreasonably." *Id.* (citation omitted). Put simply, "an insurer is entitled to summary judgment based on a genuine dispute over coverage or the value of the insured's claim only where the summary judgment record demonstrates the absence of triable issues as to whether the disputed position upon which the insurer denied the claim was reached reasonably and in good faith." *Wilson*, 171 P.3d at 1089.

In this case, Fidelity maintains that it denied payment on Plaintiff's claim due to the existence of a genuine dispute as to the amount of the claim and the validity of the claim. For Fidelity to succeed on its motion for summary judgment, the record must indisputably demonstrate that the basis for Fidelity denying Plaintiff's claim was reasonable and in good faith. *Amadeo*, 290 F.3d at 1161. Viewing the facts in the light most favorable to Plaintiff, the Court finds that there is a triable issue as to whether the disputed position upon which the insurer denied the claim was reached reasonably and in good faith. Under the above standard, there are insufficient facts to show that Fidelity thoroughly and fairly investigated, processed and evaluated the Plaintiff's claim when it was first submitted to Fidelity.

In support of Fidelity's claim, Dennis Walsh, as Claims Counsel for Fidelity, declares that he was "informed, believed, and determined that a legitimate dispute exists between CTI and Tudor over the amount of Tudor's subcontract, the quality of work performed by Tudor, the amount of costs and expenses incurred by CTI to repair and complete Tudor's scope of work, and the amount, if any, owed between the parties." (Decl. Dennis Walsh, 3, Sept. 27, 2013).

Despite this unsupported, conclusory statement, this Court cannot grant Fidelity's summary judgment motion on this claim, in the absence of any evidence proffered to detail the actual nature, quality, and thoroughness of the alleged investigation.

///

///

///

## CONCLUSION

Based upon the foregoing, Defendant Fidelity and Deposit Company of Maryland's motion for summary judgment on Plaintiff's supplemental complaint of bad faith is hereby DENIED.

SO ORDERED this /2-7H day of February, 2014.

<br>

HON. JAMES L. CANTO II
Judge, Superior Court of Guam



FILED
SUPERIOR COURT
OF GUAM

2014 FEB 12 PM 5:00

CLERK OF COURT
BY:_____

## IN THE SUPERIOR COURT OF GUAM

PEOPLE OF GUAM

vs.

FREDDY VILLAGOMEZ DEGRACIA,

OLYMPIA SABLAN TAISACAN,

BADOBINO SABLAN TAISACAN,

JONATHAN SABLAN TAISACAN,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CRIMINAL CASE NO. CF436-12

DECISION AND ORDER

(Defendant Badobino S. Taisacan's Motion to Dismiss Indictment and Motion for Bill of Particulars)

## INTRODUCTION

This matter came before the Honorable Anita A. Sukola on January 13, 2014 on Badobino Sablan Taisacan's ("Defendant") Motion to Dismiss Indictment and Motion for Bill of Particulars. Defendant was indicted along with Co-Defendants Freddy Villagomez Degracia, Olympia Sablan Taisacan, and Jonathan Sablan Taisacan. Defendant was represented by Attorney Anthony R. Camacho. Co-Defendants did not join in on the motion. The People of Guam ("the People") were represented by Assistant Attorney General James L.G. Stake. Following the hearing, the Court took the matter under advisement. Upon review of the written arguments and legal authorities presented by both parties, the Court issues this Decision and Order **DENYING** Defendant's Motion to Dismiss Indictment and Motion for Bill of Particulars.

## BACKGROUND

The Superior Court of Guam Grand Jury returned a true bill in the instant case. The indictment charges out the following: (1) Burglary (as a 2nd Degree Felony) (3 counts); (2) Theft of Property (as a 2nd Degree Felony); (3) Theft by Receiving Stolen Property (as a 2nd

People v. F. Degracia, O. Taisacan, B. Taisacan & J. Taisacan (CF436-12)                    Page 1 of 6
Decision and Order – Def.'s Mot. to Dismiss Indictment & Motion for Bill of Particulars



**ORIGINAL**

Degree Felony); (4) Theft of Property (as a 3rd Degree Felony) (2 counts); (5) Theft by Receiving Stolen Property (as a 3rd Degree Felony); and (6) Jurisdiction Over an Adult (as a Misdemeanor) (5 counts). The alleged crime took place on or about June 27, 2012, involving items stolen from Inarajan Middle School. Defendant is only indicted on the third charge, Theft by Receiving Stolen Property (as a 2nd Degree Felony).

On November 14, 2013, Defendant filed a Motion to Dismiss Indictment and Motion for Bill of Particulars. The People filed a "response" on December 27, 2013, under seal. Accordingly, the Court heard this matter on January 13, 2014.

## DISCUSSION

**Motion to Dismiss Indictment**

Defendant moves the Court to Dismiss the Indictment on the basis that the People failed to present exculpatory evidence to the Grand Jury pursuant to 8 GCA § 50.46. See Def.'s Mot. to Dismiss at 2 (Nov. 14, 2013). Defendant specifically argues that "[the People] failed to present exculpatory statements given by male minor F.D., Jr. (DOB: 8/6/94)." Id. at 3. "F.D., Jr.'s exculpatory statement was that he saw an unidentified light skinned male with black hair and narrow face with the T.V. set missing from Inarajan Middle School." Id. Defendant contends that he "was prejudiced by the omission because the [G]rand [J]ury was denied the opportunity to investigate whether [he] had any involvement at all in the alleged theft of the T.V. from Inarajan Middle School." Id. Defendant further contends that "these statement[s] are direct and substantial evidence that someone other than Taisacan received the T.V.'s that were allegedly stolen from Inarajan Middle School." Id.

The People oppose Defendant's motion for dismissal. They argue that the statement made by F.D., Jr. cannot be considered substantial evidence. The People contend that a review

of the discovery demonstrates that "F.D., Jr.'s statement is different from what Defendant makes it out to be. F.D., Jr. states in an interview to Officer Aflague, "Ma'am I did not take any part of the missing TV. And I don't know of anyone that is involved." F.D., Jr. continued, "Now I remember, that I saw a light skinned male adult about 5'7 tall with black hair, and a narrow face walking by my residence the night the TV was missing." The Court having reviewed this statement agrees with the People that F.D., Jr. did not say a man with the T.V. Rather, he saw a man as described above walking by the "evening the TV was missing."

The People have a duty to disclose exculpating evidence in their possession. Guam law provides:

> The grand jury **shall** receive only evidence presented to it by the prosecuting attorney but the prosecuting attorney shall submit any evidence in his possession which would tend to negate guilt and the grand jury shall weigh all the evidence submitted.

8 GCA § 50.46 (2005) (emphasis added).

In the instant case, the Court does not find the statement made by F.D., Jr. as exculpating evidence that would tend to negate guilt against the Defendant. The above statute does not impose on the prosecutor a duty to explain any evidence beneficial to the defense in the context the statement was offered. *See People v. Grajo*, No. 86-00002 (D. Guam App. Div. 1986). Accordingly, the Court DENIES Defendant's Motion to Dismiss Indictment.

**Motion for Bill of Particulars**

Defendant also moves for a Bill of Particulars citing 8 GCA §55.30. Defendant argues that a Bill of Particulars is necessary to clarify the pleading and contain "such particulars as may be necessary for the preparation of [his] defense." See Def.'s Mot. to Dismiss at 3 (Nov. 14, 2013). Defendant further argues that only the third charge of the indictment applies to him. "This charge does not disclose the monetary amount or the stolen items that were allegedly

received by [the Defendant]." Id. "The indictment fails to give [him] notice of exactly what stolen items he allegedly received or what the monetary value of these items were." Id.

"It is a cardinal principal of our criminal law that an indictment is sufficient which apprises a defendant of the crime with which he is charged so as to enable him to prepare his defense and to plead judgment of acquittal or conviction as a plea to a subsequent prosecution for the same offense." *People v. Jones,* 2006 Guam 13 ¶ 12 (citing *Portnoy v. United States,* 316 F.2d 486, 488 (1st Cir. 1963). "A motion for a bill of particulars is appropriate where a defendant requires clarification in order to prepare a defense." *United States v. Long,* 706 F.2d 1044, 1054 (9th Cir. 1983). "It is designed to apprise the defendant of the specific charges being presented to minimize the danger or surprise at trial, to aid in preparation and to protect against double jeopardy." *Id.* "In determining if a bill of particulars should be ordered in a specific case, a court should consider whether the defendant has been advised adequately of the charges through the indictment and all other disclosures made by the government. *Id.* (citing *United States v. Giese,* 597 F.2d 1170, 1180 (9th Cir. 1979)).

Guam law provides for Bill of Particulars as follows:

> Whether or not an indictment or information complies with § 55.10, if it fails to specify the particulars of the offense sufficiently to enable the defendant to prepare his defense, the court **may**, on motion of the defendant, require the prosecuting attorney to furnish the defendant with a **clarification** of the pleading containing **such particulars as may be necessary for the preparation of the defense.**

8 GCA § 55.30 (2005) (emphasis added).

The Court recognizes that it has discretionary authority to require the People to furnish such a clarification, notwithstanding an indictment's conformance with 8 GCA § §55.10. "The law on statutory construction is well-settled. [I]f a statute is unambiguous, then judicial inquiry is complete." *People v. Quichocho,* 1997 Guam 13 ¶ 5 (citing *Rubin v. United States,* 449 U.S.

People v. F. Degracia, O. Taisacan, B. Taisacan & J. Taisacan (CF436-12)
Decision and Order – Def.'s Mot. to Dismiss Indictment & Motion for Bill of Particulars

Page 4 of 6

424 (1981). The "Bill of Particulars" statute is unambiguous. Therefore, the Court will review the charges as drafted in the indictment to determine whether the exercise of its discretionary authority is appropriate.

Defendant is charged with Theft by Receiving Stolen Property enumerated as charge 3 in the Indictment. The charge reads as follows:

THIRD CHARGE

On or about June 27, 2012, in Guam, **FREDDY VILLAGOMEZ DEGRACIA, OLYMPIA SABLAN TAISACAN,** and **BADOBINO SABLAN TAISACAN** did commit the offense of *Theft by Receiving Stolen Property,* in that they did intentionally receive, retain or dispose of the movable property of Inarajan Middle School, knowing that it had been stolen or believing that it had probably been stolen, in violation of 9 GCA §§ 43.50(a), 43.20(a) and 4.60.

Indictment (Jul. 27, 2012).

The statutory language of the third charge, as codified in Guam law reads as follows:

(a) A person is guilty of *theft* if he intentionally receives, retains or disposes of moveable property of another knowing that it has been stolen or believing that it has probably been stolen. It is a defense to a charge of violating this Section that the defendant received, retained or disposed of the property with intent to restore it to the owner.

9 GCA § 43.50(a)(2005).

The Indictment also cites to 9 GCA § 43.20(a) relative to the third charge. That provision reads:

(a) *Theft* constitutes a felony of the second degree if the amount involved exceeds One Thousand Five Hundred Dollars ($1,500) or if the property stolen is a bus, truck, automobile, aircraft, motorcycle, or motor boat, *or in the case of theft by receiving stolen property, if the defendant is in the business of buying and selling stolen property.* In the case of theft as a felony of the second degree, the court shall impose a sentence of imprisonment of a minimum term of five (5) years and may impose a maximum term of up to ten (10) years; the minimum term imposed shall not be suspended nor may probation be imposed in lieu of the minimum term nor shall parole or work release be granted before completion of the minimum term. The sentence shall include a special parole term of not less than three (3) years in addition to such term of imprisonment provided, however, that in the case of an offender not previously convicted of a felony or of an offense constituting theft, the court may sentence the offender to not more than five (5)

years imprisonment and the provisions of this subsection prohibiting probation, suspension, parole, or work release shall not be applicable to such offender.

9 GCA § 43.20(a)(2005).

Generally, an indictment which tracks the words of the statute charging the offense is sufficient as long as the words unambiguously set forth all the elements of the offense. *See People v. Jones*, 2006 Guam 13. With the case at bar, the Court finds that the indictment tracks the language of the statute and with reference to § 9GCA §43.20(a), the monetary value is given. Therefore, Defendant is provided with adequate information to prepare his defense. Accordingly, Defendant's Motion for Bill of Particulars is **DENIED.**

## CONCLUSION

By preponderance of the evidence and based on the foregoing reasons, the Court **DENIES** Defendant's Motion to Dismiss Indictment and Motion for Bill of Particulars.

A continued Pre-Trial Conference is scheduled for *MARCH 10*[th],2014 at 9 a.m.

**SO ORDERED** this _12_ day of FEBRUARY, 2014.

HONORABLE ANITA A. SUKOLA
Judge, Superior Court of Guam

FEB 1 2 2014